UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                                                       Crim. No. 2:01-cr-82-2

John Mitchell

## REPORT AND RECOMMENDATION
(Doc. 90)

On May 23, 2014, Defendant John Mitchell, proceeding *pro se*, filed a "First Amendment Petition" seeking to vacate and amend the sentence imposed upon him in this case. (Doc. 90.)[1] Mitchell's sentence was imposed on June 16, 2003 following his plea of guilty to four counts charging Mitchell with the commission of bank robbery, brandishing a firearm during commission of a bank robbery, interstate transportation of a stolen vehicle, and interstate transportation of stolen firearms. (*See* Doc. 80.) In his § 2255 Motion, Mitchell asserts that his sentence is constitutionally defective under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), because, according to Mitchell, facts resulting in an enhancement of his sentence were not admitted by him or presented to a jury. For relief, Mitchell seeks to have his sentence vacated and to be resentenced. (Doc. 90 at 2.)

---

[1] On June 30, 2014, the Court ordered that Mitchell's petition be amended and construed as a Motion to Vacate, Modify, or Amend a Sentence pursuant to 28 U.S.C. § 2255. (Doc. 93.)

The government opposes Mitchell's § 2255 Motion, arguing that it is time-barred, procedurally defaulted, and without merit. (Doc. 95.) Mitchell has not filed any reply. For the reasons set forth below, I recommend that Mitchell's § 2255 Motion (Doc. 90) be DENIED.

## Background

### I. Second Superseding Indictment and Plea

On July 23, 2002, the federal grand jury returned a Second Superseding Indictment charging Defendant John Mitchell (and codefendant David Moodie) with conspiracy to brandish a firearm during a bank robbery under 18 U.S.C. § 924(o) (Count 1); brandishing a firearm during the commission of a bank robbery in violation of 18 U.S.C. § 924(c) (Count 2); bank robbery in violation of 18 U.S.C. § 2113 (Count 3); interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312 (Count 4); and interstate transportation of stolen firearms in violation of 18 U.S.C. § 922(i) (Count 5). (Doc. 41.) Generally, the offense conduct described in the Second Superseding Indictment charged Mitchell and Moodie with stealing firearms and a vehicle, and then using one of the firearms and the stolen vehicle to carry out a bank robbery in Vermont before driving the stolen car to New Hampshire and burning both the car and the firearm. (*See id.* at 1–2.) The Second Superseding Indictment did not allege the fate of the remaining stolen firearms, or specifically whether they were sold with knowledge, intent, or reason to believe that they would be used or possessed in connection with another felony offense.

On October 7, 2002, pursuant to a written plea agreement (Doc. 54), Mitchell pleaded guilty to Counts 2–5 of the Second Superseding Indictment. The Court accepted the guilty plea, deferred acceptance of the plea agreement, and ordered a Presentence Report ("PSR") in anticipation of sentencing.

## II.     Presentence Report and Sentencing

The PSR prepared by the Probation Office concluded that Mitchell faced a term of imprisonment with a sentencing guideline range of 176 to 199 months. (PSR ¶ 162.)[2] That range was based on a mandatory seven-year (84-month) consecutive sentence for Count 2,[3] plus 92–115 months based on a criminal history category of VI and a total offense level of 23 arising out of the remaining counts. To arrive at the total offense level of 23, the PSR applied specific offense characteristics and calculated adjusted offense levels for Counts 3, 4, and 5 that were greater than the base levels for each of those counts. (*Id.* ¶¶ 80–98.) In particular, the ten-level adjustment for Count 5 included a four-level increase under USSG §2K2.1(b)(5) for transferring a "firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." (*Id.* ¶ 94(c).)[4]

---

[2] The PSR applied the 2000 edition of the United States Sentencing Commission Guidelines Manual. (*Id.* ¶ 79 & n.2.)

[3] Section 924(c)(1)(A)(ii) of Title 18 imposes a "term of imprisonment of not less than 7 years" for brandishing a firearm during a bank robbery.

[4] This four-level adjustment is the only one that Mitchell names with particularity in his § 2255 Motion. (*See* Doc. 90 at 2.)

3

The basis for the adjustment under USSG § 2K2.1(b)(5) was testimony provided by Eric Pullen, who was associated with Moodie and Mitchell. According to Pullen, after the stolen car and the firearm that was brandished during the bank robbery were burned, Mitchell, Moodie, and Pullen traveled to Connecticut where Mitchell sold some of the remaining stolen firearms to some "tough gang bangers." (PSR ¶ 63.) An addendum to the PSR describes the defense's objection and assertion that Pullen's testimony was insufficient to trigger the four-level enhancement. (*Id.* at 42.) The United States Probation Officer responded to the objection, maintaining that the four-level enhancement was "correct and proper" because Pullen's statement supplied a sufficient factual basis. (*Id.*)

The Court held a sentencing hearing on June 16, 2003. (*See* Doc. 83 (sentencing transcript).) At the hearing, the defense moved for a downward departure based on the disparity of treatment between the codefendants. In the course of the discussion, the parties spoke about the four-level increase for the distribution of the stolen firearms. The Court addressed that issue as follows:

> It's true that the defendant has raised an objection to the four-level increase because of the distribution of guns, knowing or have reasonable cause to believe that the guns could be used for some other criminal act. The description made by Mr. P[ullen], in particular, at pages, I think, 21 through 24 of the transcript of the grand jury testimony of Mr. P[ullen], but also everyone's aware of the testimony that he gave before the Court in regard to Mr. Mood[ie], there's a clear indication that these individuals were involved in the distribution of drugs, they weren't actually called drug dealers, but in fact they distributed drugs, crack cocaine, in turn, and it's clearly identified.
> So reasonable cause is easily established that those guns were going to be used by drug dealers in New Haven, Connecticut, to further drug

4

>   distribution. There's no question about that, actually, and so I adopt the findings of the probation officer in regard to that four-level increase.

(Doc. 83 at 15:13–16:6.) Ultimately, the Court denied the motion for downward departure. The Court imposed a sentence of 176 months' imprisonment, consisting of 92 months as calculated under the Sentencing Guidelines on Counts 3–5, plus the mandatory 84 months on Count 2, consecutive to the 92 months. The Court accordingly entered a judgment. (Doc. 80.)

## III.  Direct Appeal

Mitchell filed a timely appeal from the judgment. (Doc. 81.) On appeal, he argued that the District Court should have granted him a downward departure to make his sentence comparable with Moodie's, noting that Moodie was not required to plead guilty to violating 18 U.S.C. § 924(c). *United States v. Mitchell*, 358 F.3d 216, 217 (2d Cir. 2004) (per curiam). The Second Circuit dismissed the appeal on February 11, 2004, reasoning that the District Court's exercise of its assumed discretion to deny a departure was not appealable. *Id.* at 219.[5]

## IV.  The *Alleyne* Decision and Mitchell's § 2255 Motion

On June 17, 2013, the United States Supreme Court issued its opinion in *Alleyne v. United States*, 133 S. Ct. 2151. The Court in that case overruled *Harris v. United States*, 536 U.S. 545 (2002), as inconsistent with *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

---

[5] The Second Circuit also concluded that the District Court had erred "insofar as it stated that it had authority to depart based on differences between the sentences applicable to Mitchell and Moodie, given that that disparity resulted from the plea bargaining process and was not unconstitutional." *Id.* That error did not alter the outcome, however, because it was not the basis for the District Court's denial of Mitchell's departure motion. *Id.* at 221.

5

and held that, apart from the fact of a prior conviction, "any fact that increases the mandatory minimum [sentence] is an 'element' [of the crime] that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155. Mitchell filed his § 2255 Motion on May 23, 2014. (Doc. 90.)

## Analysis

### I. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996, a one-year period of limitation applies to § 2255 motions that runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Here, Mitchell's judgment of conviction became final on May 11, 2004—when the 90-day period for filing a petition for certiorari under Supreme Court Rule 13 expired. *See* U.S. Sup. Ct. R. 13 (eff. May 1, 2003). Thus under § 2255(f)(1), he had until May 11, 2005 to file his § 2255 Motion; his May 13, 2014 filing is not timely under subsection (f)(1).

The only other possibly applicable limitations provision is subsection (f)(3). Indeed, Mitchell's § 2255 Motion seems to allege that he was deprived of rights newly

6

recognized by the Supreme Court in *Alleyne* on June 17, 2013.  Mitchell's § 2255 Motion was filed within one year of that date.  Section 2255(f)(3) requires, however, that the newly recognized right must have been "made retroactively applicable to cases on collateral review."  As the Second Circuit has explained, "a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive."  *United States v. Redd*, 735 F.3d 88, 91 (2d Cir. 2013) (per curiam) (citation and internal quotation marks omitted).  "The Supreme Court announced the *Alleyne* rule on a direct appeal without expressly holding it to be retroactive to cases on collateral review."  *Id.*  Moreover, none of the other possible avenues for making a new rule of law retroactive applies to the rule announced in *Alleyne*.  *See id.* at 91–92.  Accordingly, § 2255(f)(3) does not apply.

     Equitable tolling is available for petitions filed under § 2255, but only in rare and exceptional circumstances.  *See Green v. United States*, 260 F.3d 78, 82–83 (2d Cir. 2001).  In order to merit equitable tolling, Mitchell would have to show reasonable diligence during the time he wishes to have tolled, and that extraordinary circumstances beyond his control prevented successful filing during that time.  *See Holland v. Florida*, 560 U.S. 631, 649 (2010).  Here, Mitchell makes no argument for equitable tolling.  Moreover, although he has shown diligence by filing his § 2255 Motion within one year of the *Alleyne* decision, the circumstance of the new rule announced in *Alleyne* is not extraordinary.  Indeed, § 2255(f)(3) covers the possibility of new rights announced by the Supreme Court; as described above, it does not apply in this case.

7

## II.     Substantive Merit of Mitchell's Claim

The government argues that even if Mitchell's claim were not time-barred, it would still fail because it lacks any substantive merit.  According to the government, the claim lacks merit because the four-level Guideline enhancement regarding the sale of firearms did not alter Mitchell's mandatory minimum sentence.  (Doc. 95 at 4.)  In support, the government relies upon *United States v. Jacques*, 555 F. App'x 41 (2d Cir. 2014) and *United States v. Harakaly*, 734 F.3d 88 (1st Cir. 2013).

In *Jacques*, the defendant on direct appeal argued that under *Alleyne*, it was error for the court to find him responsible for "trafficking five to fifteen kilograms of cocaine for purposes of calculating his Sentencing Guidelines range when the trial jury convicted him only of participating in a conspiracy to traffic between 500 grams and five kilograms of cocaine." *Jacques*, 555 F. App'x at 48–49.  The Second Circuit rejected that argument "because the district court's drug quantity determination affected only the calculation of non-binding Guidelines, not a statutory minimum or maximum penalty." *Id.* at 49. *Harakaly* is a further example of how *Alleyne* is limited to the mandatory minimum. *See Harakaly*, 734 F.3d at 97–98 (noting that *Alleyne* applies to facts that increase the "mandatory minimum," and that "[a] fact that precludes safety-valve relief [under 18 U.S.C. § 3553(f)] does not trigger or increase the mandatory minimum, but instead prohibits imposition of a sentence below a mandatory minimum already imposed as a result of the guilty plea or jury verdict").

Here, unlike in *Jacques* and *Harakaly*, at the time of Mitchell's sentencing in June 2003, the United States Sentencing Guidelines were mandatory. *See United States v.*

*Booker*, 543 U.S. 220, 233 & n.2 (2005).[6]  This Court has previously suggested that whether the Guidelines are mandatory or advisory might be determinative of the Sixth Amendment issue underlying *Alleyne* and its predecessors.  *See United States v. Cooper*, No. 2:11 CR 22-4, 2014 WL 51139, at *9 (D. Vt. Jan. 7, 2014) ("*Because the Sentencing Guidelines are advisory rather than mandatory*, *see United States v. Booker*, 543 U.S. 220 (2005), an application of Sentencing Guideline enhancements that do not increase the statutory maximum or minimum penalty neither implicates nor violate a defendant's Sixth Amendment right to a jury trial." (emphasis added)).[7]

But some courts considering *Alleyne* challenges to pre-*Booker* sentences have apparently concluded that that makes no difference.  *See, e.g.*, *Henderson v. United States*, Criminal No. 1:90CR102, Civil Action No. 1:14CV738, 2014 WL 3891670, at *3 (E.D. Va. Aug. 7, 2014) (concluding that *Alleyne*, even if applied retroactively, did not apply to petitioner's case—involving a pre-*Booker* sentencing—because "[f]actual findings made for purposes of applying the Sentencing Guidelines, which influence the

---

[6] In 2000, prior to Mitchell's sentencing, several Justices had predicted that the (mandatory) Guidelines might be unconstitutional in light of the holding in *Apprendi*.  *See Apprendi*, 530 U.S. at 550–51 (O'Connor, J., dissenting) ("[T]he Court does not say whether these [determinate-sentencing] schemes are constitutional, but its reasoning strongly suggests that they are not.").  The *Apprendi* Court, however, said very little about the impact of its holding on the (then-mandatory) Federal Sentencing Guidelines. *See id.* at 497 n.21 (opinion of the Court) ("The Guidelines are, of course, not before the Court.  We therefore express no view on the subject beyond what this Court has already held.").  It was not until the Court's opinion in *Booker* that the Court determined that Congress's decision to make the Guidelines mandatory was inconsistent with the Sixth Amendment.

[7] *See also United States v. Wilbourn*, Criminal Action No. H-10-788-1, Civil Action No. H-13-3127, 2014 WL 3830471, at *7 (S.D. Tex. July 31, 2014) ("[S]entencing courts may make factual findings that increase a defendant's sentencing guideline range, *so long as the guidelines are treated as advisory*." (emphasis added)).

9

sentencing judge's discretion in imposing an advisory Guidelines sentence and do not result in imposition of a mandatory minimum sentence, do not violate the rule in *Alleyne*");[8] *United States v. Loveless*, No. 4:95-CR-3054, 2014 WL 2587763, at *1 (D. Neb. June 9, 2014) (rejecting *Alleyne* challenge to sentence imposed prior to 1998 on multiple grounds, including because "*Alleyne* applies only to facts which increase minimum punishment required by statute. It does not apply to facts which increase a defendant's guidelines sentencing range").

Without delving into that potentially thorny problem, I conclude that, even if Mitchell's claim were not time-barred, it would fail on the merits for a different reason. Namely, as described above, the *Alleyne* decision is not retroactive on collateral review. Since Mitchell's sentence became final well before the *Alleyne* decision, *Alleyne* does not apply and Mitchell's § 2255 Motion—even if it were not time-barred—is without merit.

Other courts have reached the same conclusion. *See United States v. Young*, Criminal Action No. 06-710-02, Civil Action No. 13-2625, 2014 WL 3686091, at *3 (E.D. Pa. July 25, 2014) (concluding that petitioner's *Alleyne* theory was time-barred, and also that petitioner would likely fail to obtain relief on that theory because *Alleyne* does not apply retroactively); *Moreno v. United States*, Nos. 94-CR-0165-04 (BSJ), 13-CV-8069 (RA), 94-CR-0165-03 (BSJ), 13-CV-8705 (RA), 2014 WL 2038419, at *2–3 (S.D.N.Y. May 15, 2014) (concluding that *Alleyne* does not apply retroactively, and that

---

[8] This portion of the *Henderson* court's reasoning is confusing on its face, since it refers to the imposition of "advisory" Guidelines sentences, whereas Henderson was sentenced under a mandatory Guidelines regime.

10

habeas petition based on *Alleyne* was therefore time-barred under § 2255(f)(3) and also nonmeritorious); *Rivera v. United States*, Nos. 04 Civ. 2962(CM), S4 98 Cr. 290(CM), 2014 WL 1776938, at *1 (S.D.N.Y. Apr. 30, 2014) (concluding that petitioner's motion based on *Alleyne* was a "non-starter" because *Alleyne* is not retroactive to cases on collateral review); *cf. Ahmed v. United States*, No. 04 Civ. 1518(TPG), 2009 WL 3254452, at *6 (S.D.N.Y. Oct. 9, 2009) (concluding that *Booker* challenge failed on the merits because *Booker* did not retroactively apply).

## Conclusion

For the reasons set forth above, I recommend that Mitchell's § 2255 Motion (Doc. 90) be DENIED.

Dated at Burlington, in the District of Vermont, this 18th day of September, 2014.

/s/ John M. Conroy<br>
John M. Conroy<br>
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).